## Richmond

SEABOARD AIR LINE RAILROAD COMPANY v. BOARD OF SUPERVISORS
OF CHESTERFIELD COUNTY, ET AL.

June 13, 1955.

Record No. 4373.

Present, All the Justices.

The opinion states the case.

*Eppa Hunton, IV, H. Merrill Pasco* and *Joseph A. Howell, Jr.,*
for the appellant.

*Frederick T. Gray, Ernest P. Gates* and *William Old,* for the
appellees.

EGGLESTON, J., delivered the opinion of the court.

The Seaboard Air Line Railroad Company operates a branch line leading from a point on its main line south of the city of Richmond through Chesterfield county to the city of Hopewell. It proposes to construct a spur track running from the branch line to a point near Bermuda Hundred, in Chesterfield county, to serve the plant of. Allied Chemical & Dye Corporation. This spur track will cross primary Highway No. 10 and secondary Highways Nos. 619 and 698. The State Highway Commissioner granted the Railroad Company a permit to cross these three highways at grade subject to certain restrictions, among which were that two trains of five or six cars each would be operated during a 24-hour period; that the movement of trains be protected by automatic flashing lights and signals on Route No. 10; that Routes Nos. 619 and 698 be protected by standard legal railroad crossing signs; and that the three crossings be maintained by the Railroad Company "to the satisfaction of the State at all times."

The Board of Supervisors of Chesterfield county filed suit in the circuit court of that county against the Railroad Company, praying that it be enjoined from constructing such grade crossings unless and until application had been made to and approved by the Board, as required by Code, § 56-27. In a written opinion the circuit court held that the prayer of the bill should be granted, but before a decree was entered in that suit the Railroad Company filed an application with the Board of Supervisors for its approval of the three grade crossings. The Board approved the application of the Railroad Company for grade crossings over the secondary roads, but rejected its application for a grade crossing over Highway No. 10. Thereupon, pursuant to Code, § 56-28, the Board of Supervisors applied to the State Corporation Commission "to inquire into the propriety of the proposed location of said crossing, and all matters pertaining to its construction and operation; more especially to the manner of crossing." After a hearing, at which certain residents of the county were allowed to intervene, the Commission entered an order directing that if the Railroad Company should construct the proposed spur track across Highway No. 10, "the crossing shall not be at grade, but at separate grades," and that the Railroad Company should construct at its expense "an underpass," so that the highway would pass under the railroad tracks. From this order the Railroad Company has appealed pursuant to Code, § 56-28.

Before the State Corporation Commission and in its brief filed

before us the Railroad Company challenged the jurisdiction of the Board of Supervisors and of the Commission to pass upon its application to cross these highways, claiming that under Code, § 33-13, the State Highway Commissioner had exclusive jurisdiction of the matter. However, in the oral argument before us, this challenge of jurisdiction was abandoned and need not be further noticed. The remaining questions presented to us on the appeal are: (1) Was the appeal taken in time, and (2) Did the Commission err in refusing to permit the Railroad Company to construct a grade crossing across Highway No. 10?

█ The appellees have moved to dismiss the appeal on the ground that it was not taken within thirty days of the date of the final order of the Commission, as required by Code, § 56-28. The order was entered on June 1, 1954, the notice of appeal was filed on July 15, and the petition for appeal on September 15.

We agree with the appellant that the time for taking the present appeal is controlled by Rule 5:1, § 13, as amended, of this court prescribing the method for taking appeals from the State Corporation Commission. The pertinent portion of this rule reads: "No appeal shall be allowed unless, within sixty days after final order or judgment, counsel files with the clerk of the Commission a notice of appeal which has been served on or delivered to opposing counsel, counsel for the Commission and the Attorney General. * * *" It is conceded that the present appeal was perfected in accordance with this provision.

At its 1950 session the General Assembly enacted the following act which was approved February 3, 1950:

"The Virginia Code Commission is directed to include the rules adopted by the Supreme Court of Appeals, effective February one, nineteen hundred fifty, in the nineteen hundred fifty pocket supplement of the Code of nineteen hundred fifty, and cause them to be properly indexed and annotated.

"The rules so adopted shall supersede all statutory provisions in conflict therewith.

"In order to avoid any possible confusion which may be thought to exist in the period between February 1, 1950, and the normal effective date of acts passed at the current session, an emergency is declared to exist and this act shall be effective on and after February 1, 1950." (Acts 1950, ch. 1, p. 3.)

With clarifying amendments by Acts 1952, ch. 234, p. 319, Acts

1954, ch. 333, p. 411, the enactment was carried into the Code of 1950, 1954 Cum. Supp., § 8-1.2. The material paragraph of the section now reads: "The rules so adopted and as from time to time amended shall supersede all statutory provisions in conflict therewith, provided that no such rule shall operate to restrict or abridge any right provided by § 30-5 of the Code of Virginia."

The plain purpose and effect of this provision, as shown by its text and the preamble to the 1950 Act, are to give such rules the force and effect of statute and to repeal and "supersede all statutory provisions in conflict therewith." Consequently, a litigant desiring to prosecute an appeal from the State Corporation Commission will find the necessary steps outlined in a single simple rule, Rule 5:1, § 13, without being required to look to a number of varying statutes dealing with the subject. The motion to dismiss is overruled.

On the merits the substance of the claim of the Railroad Company is that the holding of the Commission is "contrary to the evidence, without evidence to support it, and an unreasonable exercise of its authority."

Section 156(f) of our Constitution provides that with respect to an appeal from the State Corporation Commission, "The appellate court shall have jurisdiction, on such appeal, to consider and determine the reasonableness and justness of the action of the commission appealed from, * * *; provided, however, that the action of the commission appealed from shall be regarded as prima facie just, reasonable and correct, * * *."

In our opinion, the record fully sustains "the reasonableness and justness of the action of the commission."

In its written opinion the Commission aptly points out that in the enactment of Code, §§ 56-24 and 56-363, the General Assembly has established the standards which should guide the Commission in the determination of this matter. These sections read:

§ 56-24.—*"Effect of crossing on highway*.—Such crossing shall be so located, constructed and operated as not to impair, impede or obstruct, in any material degree, the State highway or county road to be crossed, and so that the use of such highway or road by the public will not be materially interfered with; and shall likewise be so located, constructed and operated as not to render such highway or road less safe and convenient for the passage or transportation of persons or property along the same."

§ 56-363.—*"Crossing of a railroad or highway by another railroad; * * *.*—It is hereby declared to be the policy of this State that all crossings of one railroad by another, or of a county road or highway by a railroad, or of a railroad by a county road or highway, shall, wherever reasonably practicable, pass above or below the existing structure. And every railroad hereafter constructed across another railroad or across a county road or highway, and every county road or highway hereafter constructed across a railroad, shall, wherever it is reasonably practicable, and does not involve an unreasonable expense, all the circumstances of the case considered, pass above or beneath the existing structure at a sufficient elevation or depression, as the case may be, with easy grades, so as to admit of safe speedy travel over each. * * *"

The record shows that Highway No. 10 is a primary state road leading from a point on Highway No. 1, between Richmond and Petersburg, to the city of Hopewell. It is the principal connecting road between Richmond and Hopewell. At Hopewell, Highway No. 10 connects with Highway No. 154 which leads southwardly to Highway No. 460. This latter highway runs eastwardly to Suffolk, Portsmouth and Norfolk. Thus, Highways Nos. 10, 154 and 460 afford a connecting link by-passing Petersburg between Richmond and these eastern cities.

It further appears from the evidence that according to vehicle counts the daily traffic on Highway No. 10 increased from 2,960 vehicles in June, 1952, to 3,915 in June, 1953, and 5,366 in December, 1953. Because of the tremendous industrial growth in the area, it is anticipated that there will be a further increase in such traffic.

At the site of the proposed railroad crossing the atmosphere is frequently foggy, especially at night and in the early morning. Already a number of school busses are required to use this crossing each day, and due to the anticipated increase in school population there will be an increase in the number of such busses. Under the regulations of the State Board of Education each school bus is required to stop at a grade crossing and a pupil must get off the bus, see that no train is approaching, flag the bus across the track, and then re-enter the bus. This safety measure necessarily slows down traffic on a busy highway.

According to the testimony of the safety engineer of the Department of State Police, the district engineer of the Department of Highways, the executive secretary of the County Board of Super-

visors, a member of the Planning Commission of Chesterfield county, and others, a grade crossing at this point would render the highway less safe and convenient for the passage or transportation of persons or property.

The evidence on behalf of the Board further shows that since the proposed crossing is at the crest of a hill on the highway, it is practicable and without engineering difficulties to excavate the bed of the highway to a sufficient depth to permit the construction of an overhead trestle built of creosote timbers to support the railroad tracks, and thus enable the highway to pass under the railroad. The total cost of such an underpass was estimated to be about $68,000. Witnesses on behalf of the Railroad Company estimated that the cost of constructing the automatic flashing lights and signals which it proposed to erect in case a grade crossing is permitted, would be from $6,000 to $7,000.

The Commission was of opinion, on the evidence adduced, that the difference between the cost of the underpass and that of the proposed automatic signals was not unreasonable. Incidentally, the Railroad Company offered no evidence that this cost would be out of proportion to its anticipated revenues from the operation of the spur track.

In short, the Commission found that it was "clear" from the evidence before it that a grade crossing would render the highway "less safe and convenient for the passage or transportation of persons or property along the same," within the meaning of Code, § 56-24. Moreover, it found that the construction of the proposed underpass met the requirements of Code, § 56-363, in that it is "reasonably practicable" and "does not involve an unreasonable expense, all the circumstances of the case considered."

There is ample evidence to sustain these findings and accordingly the order is

*Affirmed.*